*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STANLEY JACKSON,

Defendant-Appellant.

FOR PUBLICATION
September 21, 2023
9:05 a.m.

No. 363711
Kalamazoo Circuit Court
LC No. 2019-000994-FC

Before: SWARTZLE, P.J., and O'BRIEN and FEENEY, JJ.

FEENEY, J.

Defendant pleaded guilty to larceny from the person under MCL 750.357, as a second-offense habitual offender pursuant to MCL 769.10. The trial court initially sentenced defendant to 12 months in jail to be followed by 3 years' probation, pursuant to MCL 771.1 *et seq.*, but later revoked defendant's probation and sentenced defendant to serve a minimum of 30 months in prison. Defendant now appeals by leave granted.[1] We affirm.

## I. FACTS

This case arises out of an incident that occurred on June 17, 2019, at the Kalamazoo Transportation Center in Kalamazoo, Michigan. At approximately 12:30 a.m., defendant approached the victim with a wooden board in his hand and demanded money. Though the victim tried to flee, defendant hit him on the head with the board, and the victim then gave defendant $10 because the victim was frightened. Defendant was arrested and charged with armed robbery pursuant to MCL 750.529. Thereafter, the prosecutor filed a notice of intent to seek an enhanced sentence for defendant as a fourth-offense habitual offender, MCL 769.12(1)(a).

Defendant pleaded guilty to the lesser felony offense of larceny from the person, MCL 750.357, as a second-offense habitual offender. After serving a jail term, defendant began

---

[1] *People v Jackson*, unpublished order of the Court of Appeals, entered January 10, 2023 (Docket No. 363711),

his term of 3 years' probation in April 2020. In December 2020, a Department of Corrections (DOC) probation agent filed a request for a warrant to arrest defendant for violating the terms of his probation. Specifically, the warrant alleged that defendant consumed alcohol, engaged in assaultive, abusive, threatening, or intimidating behavior, used a tree branch as a weapon, and was away from his approved residence after his curfew. Defendant pleaded guilty to one count of violating his probation—being out of his approved residence after his curfew—in exchange for the dismissal of the other three counts in the warrant. The trial court accepted defendant's plea and agreed to sentence defendant to continued probation with the additional requirement that he successfully complete the Kalamazoo Probation Enhancement Program (KPEP). Although defendant left the program without completing it, the trial court subsequently continued his probation and removed the KPEP requirement.

In November 2021, another DOC probation agent filed a warrant request for defendant's arrest because he allegedly violated the terms of his probation. The warrant stated that defendant possessed alcohol in June 2021, he was convicted of the crime of retail fraud in August 2021, he committed a crime by threatening someone with a knife in November 2021, and, during the same incident, he possessed a weapon and engaged in assaultive, abusive, threatening and/or intimidating behavior. The DOC recommended that the trial court revoke defendant's probation and sentence him to a term in prison.

The trial court held a formal hearing on defendant's probation violation on December 28, 2021, during which a plea agreement was discussed on the record. The parties stated that defendant could plead guilty to one count of violating his probation in exchange for the dismissal of the remaining counts in the warrant. Defendant was told that this would result in the revocation of his probation and a sentence of 30 months to 15 years in prison, with credit for time served. Defendant pleaded guilty to possession of alcohol, and the trial court accepted his plea. On February 8, 2022, the trial court sentenced defendant to 30 months to 15 years in prison for the crime of larceny from the person, as a second-offense habitual offender, with credit for 446 days served.

In July 2022, defendant moved to correct an invalid sentence, arguing that his guilty plea for possession of alcohol constituted his second technical violation of the terms of his probation; that pursuant to amendments to MCL 771.4b that became effective on April 1, 2021, the trial court should not have revoked defendant's probation; and that the maximum sentence defendant should have received was 30 days in jail. The prosecutor and trial court agreed that the sentence violated the statute, but defendant declined to withdraw his plea and asked the trial court to resentence him to continued probation and no more than 30 days in jail. In response, the prosecutor asked the trial court to withdraw or vacate the plea. The trial court ruled that the appropriate remedy was to allow withdrawal of the plea and to "start from scratch" with a new, probation-violation hearing. On August 30, 2022, the trial court entered an order that vacated the plea.

We granted leave to appeal to consider whether the trial court erred by vacating the plea agreement rather than resentencing defendant.[2]

## II. ANALYSIS

We review de novo questions of law at sentencing as well as issues of statutory interpretation. *People v Malinowski*, 301 Mich App 182, 185; 835 NW2d 468 (2013). We review a decision about whether to permit the withdrawal of a plea for an abuse of discretion. *People v Fonville*, 291 Mich App 363, 376; 804 NW2d 878 (2011).

The parties agree that, when defendant pleaded guilty to possession of alcohol, it was his second technical probation violation because the other alleged probation violations in 2020 and 2021 were dismissed. The parties also agree that the attorneys and trial court were unaware of the amendments to MCL 771.4b(1) and (4) when defendant entered his plea on December 28, 2021. See MCL 771.4b, as amended by 2020 PA 397. Before the effective date of the amendments on April 1, 2021, MCL 771.4b(1) provided that a probationer may be sentenced to incarceration for a maximum of 30 days for each technical probation violation, and MCL 771.4b(4) stated that, notwithstanding the 30-day caps, a trial court could choose to revoke probation and impose a sentence of incarceration for a probation violation, whether the violation was technical or formal.

Following the amendments that took effect on April 1, 2021, MCL 771.4b states, in relevant part:

> (1) Except as otherwise provided in this section, a probationer who commits a technical probation violation and is sentenced to temporary incarceration may be incarcerated for each technical violation as follows:
>
> * * *
>
> (b) For a technical violation committed by an individual who is on probation because he or she was convicted of or pleaded guilty to a felony:
>
> * * *
>
> (*ii*) For a second violation, jail incarceration for not more than 30 days.
>
> * * *
>
> (4) Subject to the exception in subsection (6), the court shall not revoke probation on the basis of a technical probation violation unless a probationer has

---

[2] We denied defendant's motion for peremptory reversal filed in this Court "for failure to persuade the Court of the existence of manifest error requiring reversal and warranting peremptory relief without argument or formal submission." *People v Jackson*, unpublished order of the Court of Appeals, entered May 22, 2023 (Docket No. 363711).

already been sanctioned for 3 or more technical probation violations and commits a new technical probation violation.[3]

Neither party disputes that the amended statute applies to this case and that, because defendant pleaded to his second technical probation violation, the penalty of probation revocation and 30 months to 15 years' imprisonment violated MCL 771.4b(1) and (4). The parties disagree about whether the proper remedy was for defendant to be resentenced to continued probation with incarceration for no more than 30 days, or for the plea to be vacated.

Because this error originated when the parties negotiated the plea agreement, when defendant accepted the agreement and entered his plea, and when the trial court accepted that plea, a discussion of the laws related to plea bargains is warranted. "A defendant pleading guilty must enter an understanding, voluntary, and accurate plea." *People v Brown*, 492 Mich 684, 688-689; 822 NW2d 208 (2012). As our Supreme Court recently explained in *People v Guyton*, ___ Mich ___, ___; ___ NW2d ___ (Docket No. 163700); slip op at 5, "[a] guilty or no-contest plea constitutes a waiver of several constitutional rights and thus triggers specific protections for the defendant."

MCR 6.302(B) to (D) set forth the rules that trial courts must follow to ensure that defendants are provided these protections when accepting plea agreements. *Id.* As this Court explained in *People v Plumaj*, 284 Mich App 645, 648 n 2; 773 NW2d 763 (2009):

> Under MCR 6.302(B), which relates to an understanding plea, the court must speak directly to the defendant and determine that he or she understands the name of the offense and the maximum possible prison sentence, the trial rights being waived, and loss of the right to appeal. Pursuant to MCR 6.302(C), which relates to a voluntary plea, the court must make inquiries regarding the existence and details of any plea agreements and whether the defendant was promised anything beyond what was in the agreement, if any, or otherwise. The court must also ask the defendant whether he or she had been threatened and if the plea was his or her choice. MCR 6.302(D), which relates to an accurate plea, requires the court to establish a factual basis for a guilty plea and state why a plea of nolo contendere is appropriate. Finally, under MCR 6.302(E), the court must make additional inquiries, including whether the prosecutor and defense counsel are "aware of any promises, threats, or inducements other than those already disclosed on the record, and whether the court has complied with subrules (B)-(D)."

Trial courts must "substantially comply with the requirements of MCR 6.302, such that " 'whether a particular departure from [MCR 6.302] justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance.' " *Guyton*, ___ Mich at ___; slip op at 5 (citations omitted).

---

[3] The exception in Subsection (6) addresses persons who are on probation for domestic violence and certain other offenses not at issue here. MCL 771.4b(6).

A specific protection in MCR 6.302(B) requires that a defendant be advised of the minimum and maximum penalty of the offense to which he intends to plead guilty. As this Court observed in *People v Blanton*, 317 Mich App 107, 119; 894 NW2d 613 (2016), if a defendant is not informed about both the minimum and maximum penalties for the crime on which the plea is based, it is a "clear defect in the plea proceedings" because the defendant cannot make an understanding plea under the circumstances. (Quotation marks and citation omitted.) Not only must defendants be fully informed about the consequences of the plea, which includes the penalty for the crime, and any habitual offender enhancement, *Guyton*, ___ Mich at ___; slip op at 7, citing *Brown*, 492 Mich at 693-694, a plea is not knowing and voluntary if the defendant is misinformed about the benefits of the plea, *Guyton*, ___ Mich at ___; slip op at 7.

Claims regarding errors in the processes or protections set forth in MCR 6.302(B) generally arise in cases brought by defendants who seek to withdraw a plea. MCR 6.310 addresses plea withdrawals, in relevant part, as follows:

> (B) Withdrawal After Acceptance but Before Sentence. Except as provided in subsection (3), after acceptance but before sentence,
>
> (1) a plea may be withdrawn on the defendant's motion or with the defendant's consent, only in the interest of justice, and may not be withdrawn if withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea. If the defendant's motion is based on an error in the plea proceeding, the court must permit the defendant to withdraw the plea if it would be required by subrule (C).
>
> * * *
>
> (C) Motion to Withdraw Plea After Sentence.
>
> (1) The defendant may file a motion to withdraw the plea within the time for filing an application for leave to appeal under MCR 7.205(A)(2)(a) and (b)(i)-(iii).
>
> (2) Thereafter, the defendant may seek relief only in accordance with the procedure set forth in subchapter 6.500.
>
> (3) If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea. If the defendant elects to allow the plea and sentence to stand, the additional advice given and inquiries made become part of the plea proceeding for the purposes of further proceedings, including appeals.
>
> (D) Preservation of Issues. A defendant convicted on the basis of a plea may not raise on appeal any claim of noncompliance with the requirements of the rules in this subchapter, or any other claim that the plea was not an understanding, voluntary, or accurate one, unless the defendant has moved to withdraw the plea in

the trial court, raising as a basis for withdrawal the claim sought to be raised on appeal.

> (E) Vacation of Plea on Prosecutor's Motion. On the prosecutor's motion, the court may vacate a plea if the defendant has failed to comply with the terms of a plea agreement.

In this case, had defendant raised the error before he was sentenced in February 2022, or after he was sentenced and within the time for filing his application for leave to appeal, defendant may have been entitled to relief under MCR 6.310(B)(1) or MCR 6.310(C)(1) and (3). Notwithstanding these potential remedies, since the discovery of the amendments to MCL 771.4b(1) and (4), defendant has repeatedly stated that he does *not* wish to withdraw his plea. In contrast, the prosecutor has taken the position that the plea should be withdrawn, if not by defendant, then on behalf of plaintiff.

We decline to speculate whether defendant has chosen not to seek, or accept, the remedy of plea withdrawal because he believes further negotiations would be less favorable to him. However, in taking this position and asking instead for resentencing, defendant is essentially asking this Court to order the trial court to reform the plea agreement in a manner that would allow him to keep the plea but change the penalty.

Defendant is correct that, as a general rule, a trial court may not vacate a plea on its own motion because the plain language of MCR 6.310(B)(1) and 6.310(E) contemplate that plea withdrawal must be made by the defendant's motion, with the defendant's approval, or by the prosecutor only when a defendant has failed to perform. *People v Martinez*, 307 Mich App 641, 649; 861 NW2d 905 (2014). Notably, the *Martinez* Court acknowledged that "situations may arise that are simply not covered by the court rules." *Id*. As one example, plaintiff cites *People v Siebert*, 201 Mich App 402, 430; 507 NW2d 211 (1993), aff'd 450 Mich 500 (1995), in which this Court ruled that a prosecutor should be permitted to withdraw a plea when the trial court imposed a sentence much shorter than the one the parties contemplated in their plea agreement. In also citing *Siebert*, this Court in *Martinez* ruled that it is appropriate to "examine the circuit court's reasons apart from the court rules to justify its ruling vacating defendant's accepted plea." *Martinez*, 307 Mich App at 650-651. In analyzing the terms of a plea agreement, courts may, therefore, apply principles of contract interpretation if doing so serves the interests of justice. *Id*. at 651.

Contracts that contravene public policy or contain unlawful consideration are void and unenforceable. *People v Smith*, 502 Mich 624, 632; 918 NW2d 718 (2018) (opinion by VIVIANO, J.). Again, however, rather than agreeing that the plea should be vacated, or withdrawing the plea himself, defendant is, in essence, asking for reformation of the plea agreement. Defendant wants to preserve the agreement to the extent that it allows him to plead guilty to one count of possession of alcohol in exchange for dismissal of the other counts in the warrant, but he wants to alter the penalty to which he agreed. We decline to do so. When a court rejects a sentence "while keeping the rest of the agreement, the trial court essentially imposes a different plea bargain on the prosecutor than he or she agreed to." *Id*. at 647. The *Smith* majority held that a trial court cannot

simply reject or change a term in the plea agreement without allowing the prosecutor an opportunity to withdraw from the agreement:

> [A] trial court cannot assume the prosecutor's charging authority by accepting a plea bargain but rejecting its sentencing agreement. . . . When it rejects either the sentence or a plea term . . . while keeping the rest of the agreement, the trial court essentially imposes a different plea bargain on the prosecutor than he or she agreed to. In such circumstances, the trial court infringes on the prosecutor's charging discretion. This is impermissible. [*Id*. at 646-647.[4]]

In these circumstances, the trial court must give the prosecutor the opportunity to withdraw the plea. Accordingly, we hold that the trial court correctly ordered that the plea agreement is vacated on the basis of plaintiff's request for withdrawal.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien

---

[4] In a separate opinion, Justice CLEMENT concurred with the majority on this point. *Smith*, 502 Mich at 658 (CLEMENT, J., concurring in part and dissenting in part).